UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

PHILLIP MOOREHEAD

                        Plaintiff,

                                                    **AMENDED COMPLAINT**

            -against-                               11 Civ. 3924
                                                    (SLT)(SMG)

CITY OF NEW YORK and

LAWRENCE WEIN

                        Defendants.

-------------------------------------------------------------------X

        Plaintiff, PHILLIP MOOREHEAD, by and through his counsel, Tracey A. Grant, Esq.

alleges the following facts and causes of action against the above-captioned Defendants:


                                **PARTIES**


1.  Plaintiff Phillip Moorehead (also referred to as "Mr. Moorehead" throughout this
    complaint") is a natural person, who, at all times mentioned herein, resided in Kings
    County, New York.

2.  At all times mentioned herein, Defendant City of New York (also referred to as
    "CITY" throughout this complaint) was a municipal agency organized and existing under
    and by virtue of the laws of the State of New York.

3. At all times mentioned herein, Defendant Lawrence Wein (" Detective Wein") was an employee of the CITY. Specifically, upon information and belief, the CITY employed Wein as a Police Detective with the 69th Precinct within Kings County, New York. At all times mentioned herein, Detective Wein was acting within the course and scope of his employment.

## JURISDICTION AND VENUE

4. This case involves a federal question.

5. As a result, this Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343 (3) and (4) and 1367, as well as 42 U.S.C. §§ 1983 and 1985.

6. This Court is the proper venue for this action because Plaintiff resides in this District.

## FACTS

7. On July 21, 2009 at approximately 11:19 a.m. Mr. Moorehead's estranged wife ( hereinafter referred to as the "complaining witness") reported to the New York City Police Department via 911 that approximately ten (10) minutes earlier she was punched by Mr. Moorehead.

8. The complaining witness infom1ed the responding officer that she was Mr. Moorehead's wife and she had an argument with Mr. Moorehead, who punched her in

the stomach with a closed fist causing pain only and that Moorehead pushed her to the ground.

9. The alleged incident was said to have occurred inside of 1519 East 95th Street, Brooklyn, New York. The responding officer took a complaint and filled out a Domestic Incident Report. The complaining witness signed a supporting deposition corroborating the Domestic Incident Report.

10. The responding officer also prepared a police complaint report and noted, "canvass conducted perp not at scene." The complaint report also noted that the complaining witness and Mr. Moorehead's residence was 1519 East 95th Street, Brooklyn, New York and that the complaining witness and Mr. Moorehead were currently living together.

11. There were no visible injuries and the complaining witness did not seek medical attention.

12. On July 22, 2009 at approximately 2 p.m, Detective Wein, was assigned to investigate this case. On said date Detective Wein responded to Mr. Moorehead's residence at 1519 East 95th Street, Brooklyn, New York, to speak with Mr. Moorehead.

13. Mr. Moorehead was not home. so Detective Wein left a card in the mailbox. Detective Wein also telephoned the complaining witness on the same date, leaving a voicemail to contact him.

14. On July 22, 2009 Detective Wein spoke to the complaining witness via telephone, during which she informed him that she and Mr. Moorehead were recently separated

and had an infant son in common.  The complaining also informed Detective Wein that she was four (4) months pregnant.

15. The complaining witness again alleged that Mr. Moorehead had punched her in the stomach during a verbal dispute and that she sustained pain to her stomach area.  The complaining witness also informed Detective Wein that she was currently living with her mother at a location other than 1519 East 95[1] Street. Brooklyn, New York in total contradiction to what the complaining told the responding officer.

16. On July 21, 2009 Mr. Moorehead arrived at the Fort Hamilton Military Installation at 9:00a.m. and immediately upon arriving dropped off my infant son at the children's youth service center located on Fort Hamilton Installation.  Mr. Moorehead worked from 9:00 a.m. to 6:30p.m. on July 21, 2009 and at no time did he leave the military installation between those hours.

17. However, on the evening of July 22, 2009 at approximately 6:45p.m. Mr. Moorehead received a telephone call from his sister informing him that a Detective Wein left a business card outside the house, requesting that Mr. Moorehead contact him.

18. Mr. Moorehead immediately contacted Detective. Wein, who stated that he was calling to inquire as to the status of the open Domestic Incident Report Mr. Moorehead had filed against his estranged wife, the complaining witness on May 10, 2009.

19. Mr. Moorehead informed Detective Wein that he could come down to the station to discuss the matter further, at which time Detective Wein informed Mr. Moorehead that he would be off from work the next two (2) days. Detective Wein instructed Mr. Moorehead to call him the following Monday.

20. Upon arriving home on the evening of July 22, 2009, Mr. Moorehead reviewed the surveillance tape that he retrieved from the surveillance camera located in the front of his residence located at 1519 E. 95th Street, Brooklyn, New York 11236.

21. The surveillance tape showed New York City Police Officers walking towards Mr. Moorehead's front door and knocking repeatedly.   Upon viewing this tape, Mr. Moorehead contacted a lawyer, whom he advised of the surveillance tape as well as his conversation with Detective Wein.

22. Thereafter, Mr. Moorehead's lawyer contacted Detective Wein to ascertain why New York Police Officers were at Mr. Moorehead's house on July 21, 2009. Mr. Moorehead was informed by my lawyer that Detective Wein would be arresting Mr. Moorehead for assault based upon allegations brought by his estranged wife, the complaining witness. Rather than being arrested at his place of employment Mr. Moorehead chose to surrender at the precinct on July 28, 2009.

23. While at the precinct Mr. Moorehead informed Detective Wein that he had a surveillance tape evidencing what time he left his home on the date in question and evidencing that the complaining witness could not have been in Moorehead's home as alleged.

24. Mr. Moorehead also advised Detective Wein that at no time did the complaining witness ever live with Mr. Moorehead and their infant son at 1519 E. 95th Street, Brooklyn, New York.  Mr. Moorehead also advised Detective Wein that the complaining witness was pregnant with another man's child.

25. Detective Wein attempted to call the complaining witness numerous times while Mr. Moorehead was being held at the precinct, in order to have the complaining witness

make a positive identification, but Detective Wein could not get in contact with the complaining witness.

26. Detective Wein asked Mr. Moorehead when was the last time he, Moorehead had spoken to the complaining witness and Mr. Moorehead informed him that the complaining witness had called him the night before, stating, "I'm sorry but that's the only way I could get into a battered women's shelter, the other shelter's had a waiting list."

27. Detective. Wein asked Mr. Moorehead if he thought the complaining witness would show up at the precinct to identify Mr. Moorehead as the person that assaulted her and Mr. Moorehead responded in the negative.

28. Detective Wein then requested that Mr. Moorehead call the complaining witness at which time Mr. Moorehead refused. Detective Wein stated, "This is bullshit, I'm going to tell the DA that the complaining witness isn't cooperating and they are going to drop this." Thereafter, a male, caucasian detective stated to Detective Wein "you should cut him loose and arrest her for making a false complaint?"

29. The Kings County District Attorney's Office drafted a complaint room screening sheet, dated July 28, 2009 in regards to Mr. Moorehead's arrest. This screening sheet was drafted based upon police paperwork and telephone conversation with the arresting officer, specifically, Detective Wein.

30. This screening was drafted after Mr. Moorehead's arrest and prior to his arraignment. Said screening sheet was read into the record during Mr. Moorehead's arraignment. It screening sheet states that Mr. Moorehead was charged with assault by the arresting

officer, but the District Attorney's Office chose to charge attempted assault, rather than assault.

31. The screening sheet also indicated that the alleged incident occurred inside of the complaining witness' residence at1519 95th Street, Brooklyn, New York 11236. The screening sheet also stated that the complaining witness and Mr. Moorehead were living together at the time of the alleged incident.

32. The screening sheet also stated that officers arrived at scene but that Mr. Moorehead would not allow officers to enter.

33. The complaint room screening sheet also indicated that prior to this alleged incident, there was a history of domestic abuse and that there was an open Domestic Incident Report filed on May 10, 2009.

34. The screening sheet failed to mention that Mr Moorehead and the complaining witness were in the middle of a custody battle over their infant son and that Mr. Moorehead had temporary full custody prior to the complaining witness' allegations against Mr. Moorehead.

35. A criminal court complaint charged Mr. Moorehead with attempted assault in the third degree. Detective Wein is the deponent and the complaining witness is the informant as to what allegedly occurred on July 21, 2009. Consequently, it was Detective Wein who signed the complaint, not the complaining witness.

36. Mr. Moorehead was arraigned on July 28, 2009, he plead not guilty and was released on his own recognizance. The matter was put over to August 27, 2009 for the People to obtain an executed supporting deposition from the complaining witness corroborating what Detective Wein stated in the criminal court complaint.

37. On August 27, 2009 the People failed to obtain the executed supporting deposition from the complaining witness and the matter was adjourned to November 5, 2009 for final disposition.

38. On November 5, 2009, again the People were unable to obtain an executed supporting deposition from the complaining witness to corroborate the criminal court complaint.

39. Consequently the Honorable Henry dismissed all criminal charges against Mr. Moorehead and also granted Mr. Moorehead full legal custody of their infant son.

40. Mr. Moorehead was forced to hire a private attorney to defend his innocence.

41. Mr. Moorehead's false arrest, false imprisonment and malicious prosecution did cause humiliation and emotional distress and did damage Mr. Moorehead's professional reputation within the United States Army.

## AS AND FOR A FIRST CAUSE OF ACTION

## VIOLATION OF MR. MOOREHEAD'S CIVIL RIGHTS

**(Liability of Defendant CITY For Civil rights violations pursuant to 42 U.S.C. sec. 1983))**

42. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 throughout 41 of this Complaint.

43. The CITY has had a number of customs and practices which caused and/or contributed to this false arrest, imprisonment, malicious prosecution and negligence.

44. First, agents, servants and/or employees of the CITY routinely fail to conduct a reasonable investigation before making an arrest and/or causing a criminal prosecution to be commenced against an arrestee. In accordance with

that custom and practice. Defendant CITY, as well as their

agents, servants, and/or employees including but not limited to Defendant Wein

failed to investigate the complaining witness' credibility, interview any third

party witnesses and even refused to give Plaintiff an opportunity to explain himself

before causing him to be arrested and criminally prosecuted.

45. Second, agents, servants and/or employees of the CITY  and the

NYPD routinely arrest suspects and cause them to be prosecuted without probable cause.

In accordance with that custom and practice, Defendant CITY

as well as their agents, servants and/or employees including but not limited to Defendant

Wein arrested Plaintiff and caused him to be prosecuted without probable

cause.

46. Third, the Defendant CITY and NYPD have failed to train its agents, servants,

and/or employees to properly understand the meaning of probable cause. This failure has

been and continues to be, a proximate cause of Defendant CITY,

as well as their agents, servants and/or employees, routinely relying upon the word of one

person to support probable cause for an arrest and a criminal prosecution without

investigating the truth of that person's allegations or speaking to other witnesses. Such

was the case here as Defendant CITY as well as their agents,

servants and/or employees, including but not limited to Defendant Wein,

relied solely upon the word of the complaining witness to support probable cause for

Plaintiff's arrest and criminal prosecution without investigating the truth of complaining

witness' allegations or speaking to other witnesses.

47. Fourth, the Defendant CITY has sanctioned the customs and

practices heretofore described through its deliberate indifference to the effect of such

customs and practices upon the constitutional rights of Plaintiff and others

similarly situated.

48. As a result the Defendant, CITY has continuously been found liable by juries and/or have

settled voluminous amounts of false arrest cases based upon lack of probable cause.

(Exhibit A)

a. As a result of these injuries, Plaintiff has been damaged in the sum of $1,000,000.

b. In light of the egregious nature of these Defendants' wrongful conduct, Plaintiff

also seeks punitive damages for this cause of action in the sum of $1,000,000.

c. Plaintiff will also be seeking attorneys' fees based upon this cause of action.

**<u>AS AND FOR A SECOND CAUSE OF ACTION</u>**

**<u>VIOLATION OF MR. MOOREHEAD'S CIVIL RIGHTS</u>**

**<u>(False Arrest and Imprisonment against Defendant Detective Wein)</u>**

49. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1

throughout 48 of this Complaint.

50. Defendant Detective Wein lacked probable cause to arrest and imprison the Plaintiff.

51. This wrongful conduct was done in violation of Plaintiff's constitutional rights.

This wrongful conduct was done within the course and scope of these individual

Defendants Detective Wein's employment.

52. As set forth above in paragraphs 7 throughout 41  above, CITY

has maintained a number of customs and practices which caused and/or

contributed to this false arrest and imprisonment.

53. As set forth above, such conduct was performed under the color of state law.

As a result of his conduct Defendant  DecticeWein violated Plaintiff's civil rights and
are liable

pursuant to 42 U.S.C. Sec. 1983.

54. As a result of these injuries, Plaintiff has been damaged in the sum of $1,000,000.

55. Plaintiff will also be seeking attorneys' fees based upon this cause of action.

## AS AND FOR A THIRD CAUSE OF ACTION

## VIOLATION OF MR. MOOREHEAD'S CIVIL RIGHTS

### (Malicious Prosecution against Defendant Detective Wein)

56. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 throughout 55 of this Complaint.

57. As set forth above, Defendant Detective Wein caused a criminal prosecution to be commenced against the Plaintiff under the color of state law.

58. As set forth above, that prosecution ended in the Plaintiff's favor as the matter against him was dismissed and sealed by the presiding judge on November 5, 2009.

59. As set forth above, that prosecution of the Plaintiff was without probable cause and with malice.

60. As set forth above, Defendant Detective Wein continued to endorse the complaining witness' allegations without continued investigation as to whether the signed complaint was in fact falsely filed with Kings County District Attorney's Office.

61. As set forth above, Defendant Detective Wein knew or should have known that Plaintiff had not committed any crime.

62. This wrongful conduct was within the course and scope of Defendant Detective Wein's employment.

63. As set forth above, this criminal prosecution against the Plaintiff was the

proximate cause of him being deprived of his rights to freedom and liberty under the

Fourth Amendment.

64. As a proximate result of the conduct set forth herein, Defendant Detective Wein

violated Plaintiff's civil rights and are liable to 42 U.S.C. Sec. 1983.

65. These violations were the proximate cause of Plaintiff's emotional injuries and

financial costs set forth above.

66. As a result of these injuries, Plaintiff has been damaged in the sum of $1,000,000.

67. Plaintiff also seeks punitive damages for this cause of action in the sum of

$1,000,000.

68. Plaintiff will also be seeking attorneys' fees based upon this cause of action.


### JURY DEMAND

 Plaintiff demands a trial by jury.

### CONCLUSION

**WHEREFORE**, Plaintiff Phillip Moorehead, demands judgment against the

above captioned Defendants in the sum of $4,000,000., together with the costs and

disbursements of this action, including attorneys' fee.



Dated: Brooklyn, New York

December 4, 2012

_____

Tracey A. Grant, Esq.

Attorney for Plaintiff

26 Court Street-Suite 714

Brooklyn, New York 11242

(718) 858-3000

Michael A. Cardozo

Corporation Counsel

Of the City of New York

Attorney for Defendants

City of New York and

Lawrence Wein

100 Church Street

New York, New York 10007

Of Counsel, Uriel Abt